**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FERNANDO ARRELLANO-ESPINOZA, ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. 2:10-cr-00448-LDG-PAL <br><br> **REPORT OF FINDINGS AND RECOMMENDATION** <br><br> (Mtn to Dismiss - Dkt. #16) |

This matter is before the court on the Motion to Dismiss Based on a Prior Unlawful Deportation (Dkt. #16) filed by Defendant Fernando Arrellano-Espinoza ("Arrellano") on November 12, 2010. The court has considered the Motion, the government's Response (Dkt. #17) filed November 23, 2010, and Arrellano's Reply (Dkt. #18) filed December 2, 2010.

**BACKGROUND**

Arrellano is charged by way of a criminal Indictment (Dkt. #1) returned September 8, 2010, with one count of Unlawful Reentry of a Deported Alien in violation of 8 U.S.C. § 1326. The Indictment alleges that Arrellano was deported and removed from the United States on or about May 28, 2009, and on or about August 24, 2010, he returned and was found in the United States, having unlawfully reentered and remained without the express consent of the Attorney General or his successor, the Secretary for Homeland Security under 6 U.S.C. §§ 202(3) & (4) and 6 U.S.C. § 557. In the current motion, Arrellano challenges the lawfulness of the underlying Removal Order.

On March 29, 2008, Arrellano, under the name Rodrigo Gonzales-Lopez, was charged by information in the Eighth Judicial Court in Clark County, Nevada, with Assault With a Deadly Weapon in violation of Nevada Revised Statute ("NRS") § 200.471. *See* Attachment to Government's Response at 1-2. Arrellano pled guilty and was sentenced on May 29, 2007, to eighteen to forty-eight months in

prison. *Id.* at 3-4. Subsequently, on June 25, 2007, Arrellano was charged with Attempt Possession or Sale of Document or Personal Identifying Information to Establish False Status or Identity in violation of NRS §§ 193.330 and 205.465. *Id.* at 5-6. On August 9, 2007, he pled guilty and was sentenced to twelve to thirty-two months in prison concurrent with the assault sentence. *Id.* at 7-8.

Immigrations and Customs Enforcement ("ICE") contacted Arrellano in the Southern Desert Correctional Center, where Arrellano admitted he was a citizen of Mexico and was illegally in the United States. ICE took Arrellano into its custody on May 22, 2009. *Id.* at 18-20. He was personally served with a Notice to Appear on May 22, 2009. *See* Exh. A to Motion to Dismiss. The Notice to Appear alleged that Arrellano was not a citizen or national of the United States, that he was a native and citizen of Mexico, that he entered the United States at or near San Ysidro, California, on or about July 2005, and that he was not then admitted or paroled after inspection by an immigration officer. *Id.* As a result, the Notice to Appear charged that he had violated INA § 212(a)(6)(A)(I) because he was an alien present in the United States without being admitted or paroled. *Id.* That same day, Arrellano signed a Stipulated Request for Removal and Waiver of Hearing. *See* Exh. B to Motion to Dismiss. As a result, the Immigration Judge signed a Removal Order, and Arrellano was deported without a hearing to Mexico on May 26, 2009. *See* Exh. C to Motion to Dismiss; Attachment to Response at 21-22. Arrellano was subsequently arrested in Las Vegas, Nevada, on October 21, 2009, for drug trafficking offenses, which led to the Indictment in this case. *Id.* at 23.

**The Parties' Positions**

Arrellano argues that the Removal Order was obtained unlawfully and cannot be used an element of an illegal reentry offense. He acknowledges he signed a Stipulated Request for Removal Order and Waiver of Hearing. *See* Exh. B. However, he asserts there were serious defects that foreclosed proper judicial review of the administrative removal proceeding, and his due process rights were violated because he was not advised that he was eligible for relief from removal by voluntary departure. Arrellano argues that because the Notice to Appear did not allege he was a terrorist or an aggravated felon, he satisfied the requirements for voluntary departure. Notwithstanding his eligibility, he was never informed that relief from removal was available. Furthermore, because Arrellano was provided incomplete information regarding the eligibility of relief, he could not have made a

1  "considered and intelligent" decision to waive his right to appeal the Removal Order.  Arrellano
2  contends that he was prejudiced by not being offered voluntary departure because based upon the
3  information presented in the Notice to Appear and to the Immigration Judge, he was eligible for relief
4  from removal.

5  In response, the government asserts Arrellano has a conviction for an aggravated felony because
6  the Ninth Circuit has found that a conviction under NRS § 200.471 is categorically a crime of violence,
7  and crimes of violence are aggravated felonies under 8 U.S.C. § 1101(a)(43)(F).  Because of
8  Arrellano's conviction under NRS § 200.471, he was ineligible to receive the discretionary relief of
9  voluntary departure.  Relying on *Salveijo-Fernandez v. Gonzales*, 455 F.3d 1063 (9th Cir. 2006), the
10 government asserts that although Arrellano's prior conviction was not alleged in the Notice to Appear,
11 this does not preclude its use to disqualify him from relief from removal.  The government also
12 maintains argues that Arrellano did not suffer any prejudice because of the Immigration Judge's failure
13 to inform him of relief from removal because Arrenallo was ineligible for discretionary relief.
14 Additionally, Arrellano was ineligible for discretionary relief based upon the factors enunciated by the
15 Ninth Circuit in *Campos-Granillo v. INS*, 12 F.3d 849 (9th Cir. 1994).

16 Arrellano replies that his prior conviction was never presented to the Immigration Judge, and
17 therefore this case is distinguishable from *Salvejo-Fernandez* because there, although not alleged in the
18 Notice to Appear, the Immigration Judge was aware of the defendant's previous conviction for
19 trafficking in controlled substances.  Here, Arrellano never appeared before an Immigration Judge
20 because he signed a stipulated request for a removal order.  Furthermore, *Salviejo-Fernandez* involved a
21 request for cancellation of removal which requires filing an application in which an alien must list all
22 previous convictions where as a request for voluntary departure may be made verbally at the removal
23 hearing.  Because the Immigration Judge had no knowledge of Arrellano's criminal history, it is
24 plausible that discretionary relief would have been granted.  Accordingly, the Motion to Dismiss should
25 be granted.
26 / / /
27 / / /
28 / / /

**DISCUSSION**

**A.   The Legal Standard for Collateral Attack of a Prior Deportation Order**

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009-546 ("IIRIRA"), changed the terminology of the Immigration and Nationality Act ("INA").  Before IIRIRA, aliens who committed aggravated felonies were placed in *deportation* proceedings after being served with an order to show cause.  *Ram v. INS*, 243 F.3d 510, 513 (9th Cir. 2001).  After IIRIRA, aliens are placed in *removal* proceedings after being served with a notice to appear.  The cases frequently use the terms deportation and removal interchangeably.  8 U.S.C. § 1326(a) makes it a crime for an alien to enter, attempt to enter, or to be found within the United States without consent of the Attorney General after being denied admission, excluded, deported, or removed.

A defendant may collaterally attack a prior deportation or removal to preclude the government from relying on the deportation in a prosecution under section 1326.  Such collateral attacks of underlying deportations or removals rely on the Supreme Court's decision in *United States v. Mendoza-Lopez*, which held that the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation.  481 U.S. at 838-39; *see also United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).  After the Supreme Court's holding in *Mendoza-Lopez*, Congress codified when underlying deportations would be subject to such attacks in 8 U.S.C. § 1326(d).  This section reiterates the Court's holding in *Mendoza-Lopez*, but it also adds an administrative exhaustion requirement.  Pursuant to section 1326(d), an alien may not collaterally attack an underlying deportation proceeding unless he demonstrates that: (1) he exhausted his administrative remedies to seek relief against the deportation order; (2) the deportation proceeding improperly deprived him of the opportunity for judicial review; and (3) the order was fundamentally unfair.  The Ninth Circuit has held that an underlying removal order is fundamentally unfair if an alien's due process rights were violated by defects in his underlying deportation proceeding, and he suffered prejudice as a result of the due process violation.  *United States v. Ramos*, 623 F.3d 680 (2010).

"In a criminal proceeding, an alien cannot collaterally attack an underlying deportation order if he validly waived the right to appeal that order."  *Id. (citing United States v. Estrada-Torres,* 179 F.3d 776, 780-81 (9th Cir. 1999), *cert. denied*, 531 U.S. 864 (2000), *overruled on other grounds*

1  *by, United States v. Rivera-Sanchez*, 247 F.3d 905 (9th Cir. 2001)).  The exhaustion requirement in
2  section 1326(d) cannot bar collateral review of a deportation proceeding unless the waiver of the right
3  to administrative appeal comports with due process.  *United States v. Muro-Inclan*, 249 F.3d 1180,
4  1183 (9th Cir. 2001).  A waiver of appeal is valid and comports with due process when it is both
5  "considered and intelligent."  *Arrieta*, 224 F.3d at 1079.  "Such a waiver is not 'considered and
6  intelligent' when 'the record contains an inference that the petitioner is eligible for relief from
7  deportation,' but is not "advise[d] . . . of this possibility and give[n] . . . the opportunity to develop the
8  issue.'"  *Muro-Inclan*, 249 F.3d at 1182 (*quoting Arrieta*, 224 F.3d at 1079 (internal quotation
9  omitted)).  If the waiver is not considered and intelligent, the deportee is deprived of judicial review in
10 violation of due process.  *United States v. Lopez-Vasquez*, 1 F.3d 751, 753-54 (9th Cir. 1993) (per
11 curiam).  The government bears the burden of proving the waiver.  *Id.*

12 When a petitioner moves to dismiss an indictment under § 1326 based on a violation of due
13 process in the underlying removal proceeding, he must also show that prejudice resulted from the
14 violation of his due process rights.  *Muro-Inclan*, 249 F.3d at 1184.  "To establish prejudice, petitioner
15 does not have to show that he actually would have been granted relief.  Instead, he must only show that
16 he had a 'plausible' ground for relief from deportation."  *Id.* (citation and internal quotation omitted).

17 **B.     Qualification as Aggravated Felony**

18 The term "aggravated felony" is defined at 8 U.S.C. § 1101(a)(43)(F) as "a crime of violence . . .
19 for which the term of imprisonment is at least one year."  *Id.*  A crime of violence is defined as an
20 offense that has, as an element, the use, attempted use, or threatened use of physical force against the
21 person or property of another; or (b) any other offense that is a felony and that, by its nature, involves a
22 substantial risk that physical force against the person or property of another may be used in the course
23 of committing the offense.  *See* 18 U.S.C. § 16.  The Ninth Circuit has held that a conviction for assault
24 with a deadly weapon under NRS § 200.471 qualifies as a crime of violence–and therefore, an
25 aggravated felony–for immigration purposes.  *See Camacho-Cruz v. Holder,* 621 F3d 941, 943 (9th Cir.
26 2010).  Arrellano's Nevada conviction for assault with a deadly weapon under NRS § 200.471 is an
27 aggravated felony which made him statutorily ineligible for relief from removal through voluntary
28 departure under section 1229(c)(A)(2).

### C. Prejudice

To be eligible for relief from removal by voluntary departure, an alien must show that he is not deportable as a terrorist under 8 U.S.C. § 1227(a)(2)(A)(iii) or as an aggravated felon under 8 U.S.C. § 1227(a)(4)(B) of the INA.  8 U.S.C. § 1229c(a); *see also In re Cordova*, 22 I. & N. Dec. 966, 967-68 (BIA 1999) (describing the voluntary removal statute).  The Notice to Appear alleged Arrellano was removable on the grounds that he was in the United States without being admitted or paroled in violation of § 212(a)(6)(A)(i) of the INA, and it did not allege he was removable as an aggravated felon.  However, it is undisputed Arrellano's conviction for assault with a deadly weapon under NRS § 200.471 qualifies as an aggravated felony.

In order to show prejudice, an alien must establish that there were plausible grounds for relief. The Ninth Circuit has noted that "[i]f the defendant is 'barred from receiving relief, his claim is not 'plausible.'" *United States v. Ramos*, 623 F.3d 672, 684 (9th Cir. 2010) (*citing United States v. Gonzalez-Valerio,* 342 F.3d 1051, 1054 (9th Cir. 2003)).  Arrellano was statutorily ineligible for receiving relief from removal because of his aggravated felony conviction.  Accordingly, he cannot show he was prejudiced by the Immigration Judge's failure to provide notice he was removable as an aggravated felon or the failure to explain voluntary departure.

For all of the foregoing reasons,

**IT IS THE RECOMMENDATION** of the undersigned United States Magistrate Judge that Defendants's Motion to Dismiss Based on a Prior Unlawful Deportation (Dkt. #16) be **DENIED.**

Dated this 4th day of January, 2010.

```
                                    _____
                                    PEGGY A. LEEN
                                    UNITED STATES MAGISTRATE JUDGE
```